IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| KENT W. RINNE, | ) | |
| | ) | |
| Plaintiff, | ) | 4:18CV3037 |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF BEATRICE, DERRICK | ) | **MEMORANDUM** |
| HOSICK, Beatrice Police Department | ) | **AND ORDER** |
| Officer #306, in his individual | ) | |
| capacity, ANTHONY CHISANO, | ) | |
| Beatrice Police Department Officer | ) | |
| #304, in his individual capacity, and | ) | |
| NATASHA NESBITT, Beatrice | ) | |
| Police Officer #316, in her individual | ) | |
| capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff brings this 42 U.S.C. § 1983 action for money damages against three City of Beatrice police officers, in their individual capacities, alleging constitutional violations stemming from an arrest for speeding, driving under the influence, refusal to submit to a preliminary breath test, and failing to obey a police officer. Pending before the court is Defendants' Amended Motion for Summary Judgment based on qualified immunity and, alternatively, on the merits. (Filing 43.) For the reasons that follow, Defendants' Motion shall be granted.

## I. PROCEDURAL BACKGROUND

Plaintiff originally asserted section 1983 claims for excessive force, false arrest, false imprisonment, and negligence. (Filing 1.) The parties jointly dismissed the negligence claim without prejudice (Filing 12), and the court dismissed without prejudice the excessive-force and false-arrest claims against the City of Beatrice and

the Defendant officers in their official capacities, as well as the false-imprisonment claim against all parties in all capacities (Filing 14).

The court granted Plaintiff leave to file an amended complaint to assert additional claims that surfaced during discovery. (Filings 27, 38.) Plaintiff filed a First Amended Complaint (Filing 39) alleging the following claims: (1) excessive force (§ 1983 claim under Fourth and Fourteenth Amendments) against all Defendant officers; (2) failure to intervene and false arrest (§ 1983 claim under Fourth and Fourteenth Amendments) against Defendant Officers Nesbitt and Chisano; (3) denial of right to fair trial (§ 1983 claim under Fifth and Fourteenth Amendments) against Defendant Officer Hosick; and (4) intentional infliction of emotional distress (state law) against all Defendant officers. Plaintiff does not assert any new claims against the City of Beatrice.

Despite the explicit statement in Plaintiff's First Amended Complaint that he sues the Beatrice police officers "in their official capacity" (Filing 39 ¶ 15), Plaintiff has now informed the court that he is suing Defendants Derrick Hosick, Anthony Chisano, and Natasha Nesbitt in their individual capacities only as to all claims—including the new claims asserted for the first time in Plaintiff's First Amended Complaint. Plaintiff represents that counsel for the Defendants does not object to Plaintiff's clarification. (Filing 51.)

## II. STANDARD OF REVIEW

When a defendant asserts a defense of qualified immunity, a plaintiff must show that the facts taken in the light most favorable to him establish (1) that the defendant violated his constitutional right and (2) that the right was clearly established at the time of the incident. *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). A right is "clearly established" only if the violation was "beyond debate" such that only a plainly incompetent officer or a knowing

lawbreaker would engage in the alleged misconduct. *District of Columbia v. Wesby*, ___ U.S. ___, 138 S. Ct. 577, 589, 199 L. Ed. 2d 453 (2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011)).

*Johnson v. McCarver*, No. 18-1148, ___ F.3d ___, 2019 WL 5656242, at *2 (8th Cir. Nov. 1, 2019)

## III.  UNDISPUTED MATERIAL FACTS

The court finds that the following material facts, as stated in the Defendants' brief, are fully supported by the evidence cited and have not been properly controverted by Plaintiff. Consequently, they are deemed admitted for purposes of summary judgment. *See* NECivR 56.1(b)(1); Fed. R. Civ. P. 56(e)(2)[1]; *see also Roe v. St. Louis Univ.*, 746 F.3d 874, 881 (8th Cir. 2014) ("[i]f no objections have been raised in the manner required by the local rules, a district court will not abuse its

---

[1]The court's local rules require the party moving for summary judgment to file a brief containing a "separate statement of material facts about which the moving party contends there is no genuine issue to be tried and that entitles the moving party to judgment as a matter of law." This statement of facts "should consist of <u>short</u> numbered paragraphs, each containing pinpoint references to . . . materials that support the material facts . . . ." NECivR 56.1(a) (emphasis in original). If the non-moving party opposes the motion, that party must "include in its [opposing] brief a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). Such response must "state the number of the paragraph in the movant's statement of material facts that is disputed" and must contain pinpoint citations to evidence supporting the opposition. *Id*. "Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response." NECivR 56.1(b)(1) (emphasis removed). Here, Plaintiff has responded by brief to Defendants' Motion for Summary Judgment, but he did not specify the numbered paragraphs in Defendants' statement of material facts that he seeks to dispute. Rather, he includes his own "Statement of Additional Material Facts That Preclude Summary Judgment." (Filing 46 at CM/ECF pp. 2-8.)

discretion by admitting the movant's facts").

     1.     On August 25, 2016, Officer Hosick was on duty with the Beatrice Police Department.

     2.     On August 25, 2016, at approximately 1928 hours, Officer Hosick was traveling north in the 1000 block of South 6th Street in Beatrice, Nebraska when he observed a red Buick traveling south which appeared to be traveling above the posted 35 MPH speed limit.

     3.     Officer Hosick utilized his front radar antenna and obtained a radar clock of 50 MPH on the red Buick.[2]

     4.     Officer Hosick conducted a vehicle stop on the red Buick as it pulled into the residence driveway of 1200 South 6th Street in Beatrice, Nebraska.

     5.     Officer Hosick contacted the driver of the red Buick, who was identified as Mr. Rinne.

     6.     Officer Hosick asked Mr. Rinne why he was traveling so fast, and Mr. Rinne stated that he had to use the restroom.

     7.     While Officer Hosick was waiting for Mr. Rinne to find his registration and insurance documentation, Officer Hosick detected the odor of alcoholic beverage emitting from Mr. Rinne's vehicle.

     8.     Officer Hosick returned to his patrol vehicle to ensure Mr. Rinne did not have any warrants, he returned to Mr. Rinne's car, and Mr. Rinne had stepped out of his vehicle.

     9.     As Officer Hosick spoke to Mr. Rinne outside of his

---

[2]Plaintiff asserts that dash-camera video shows that Plaintiff's red Buick was out of Officer Hosick's sight for 10 seconds. However, the video does not show what Officer Hosick observed in his rear-view or side mirrors, and Officer Hosick testified that he never lost sight of Plaintiff's red Buick. (Filing 33-1 at CM/ECF pp. 52-53.)

vehicle, he again detected the odor of alcoholic beverage emitting from Mr. Rinne's person.

10. Officer Hosick asked Mr. Rinne if he had anything to drink that evening, and Mr. Rinne admitted that he had three to four beers.

11. Officer Hosick also observed Mr. Rinne's eyes to be bloodshot and watery, and he appeared to have slightly lethargic, slurred speech.

12. At this time, Officer Hosick requested Mr. Rinne to submit to field sobriety testing to determine his level of impairment and if he was ok to be driving on the road.

13. Mr. Rinne informed Officer Hosick that he was no longer driving and was already home.

14. Officer Hosick advised Mr. Rinne that he was aware that he was home, but that Officer Hosick had observed Mr. Rinne commit a violation on the roadway.

15. Officer Hosick continued to ask Mr. Rinne if he was willing to submit to field sobriety testing, and Mr. Rinne continued to neglect answering the question by informing Officer Hosick that he was on his own property, he was not speeding, and he was going to wait for his wife to get home.

16. Mr. Rinne admitted that he did not comply with Officer Hosick's request to submit to field sobriety testing.

17. Officer Hosick informed Mr. Rinne that he was accepting his re-direction as a refusal to submit to the field sobriety testing, and that he was going to continue with his DUI investigation.

18. Officer Hosick informed Mr. Rinne that the next step was for Mr. Rinne to take a preliminary breath test.

19.     Mr. Rinne refused to give Officer Hosick a direct answer if he was going to refuse the preliminary breath test.

20.     Officer Hosick instructed Mr. Rinne to move to his patrol vehicle so he could gather the items needed for a preliminary breath test and Mr. Rinne repeatedly refused to move to the patrol vehicle.

21.     Officer Hosick attempted to grab Mr. Rinne's arm and direct him to his patrol vehicle, but Mr. Rinne pulled away from Officer Hosick's grasp.

22.     At this time, Mr. Rinne again informed Officer Hosick that he was going to wait for his wife.

23.     Mr. Rinne also stated that he was not drunk and that Officer Hosick was on his property.

24.     Officer Hosick informed Mr. Rinne that he was interfering with the DUI investigation, and if he continued to do so, he would be taken to jail.

25.     Mr. Rinne continued to redirect Officer Hosick's questioning, informing Officer Hosick that he had not violated any law.

26.     At such time, Officer Nesbitt arrived on location for assistance.

27.     Officer Hosick asked Mr. Rinne what he did not understand and how he could explain the situation better, and Mr. Rinne replied "What you need to do is get the proper information to do it."

28.     Officer Hosick repeatedly told Mr. Rinne "let's go" [back to the patrol vehicle] and every time Mr. Rinne responded "no".

29.     Officer Hosick verbally told Mr. Rinne that he was placing him under arrest and stated multiple times that he needed him to turn around and place his hands behind his back, but Mr. Rinne refused.

30.     At such time, Mr. Rinne was placed under arrest for obstruction.

31.     Officer Hosick never issues a citation in lieu of arrest for failing to obey a lawful order.

32.     Officer Chisano did not participate in Mr. Rinne's arrest.

33.     As Officer Hosick informed Mr. Rinne that he was under arrest, Mr. Rinne informed Officer Hosick that he was not.

34.     Officer Hosick informed Mr. Rinne that he was going to take him to sit in the back of Officer Hosick's patrol vehicle, and Mr. Rinne stated "no we are not."

35.     Officer Hosick grabbed Mr. Rinne and directed him to place his hands behind his back.

36.     Officer Nesbitt observed that Mr. Rinne refused to place his hands behind his back after Officer Hosick's instructions to do so, and instead just stood there and said that he wanted to continue to wait for his wife to get on scene.

37.     While Officer Hosick was placing handcuffs on Mr. Rinne, Officer Hosick observed that Mr. Rinne was locking his arms straight and tensed his body.

38.     While trying to place the handcuffs on Mr. Rinne, Officer Hosick and Officer Nesbitt told Mr. Rinne to stop resisting.

39.     Officer Hosick was able to get Mr. Rinne's arms together by simply pushing the two arms together.

40.     Officer Nesbitt assisted Officer Hosick by touching Mr. Rinne's arm and helping to get his arms in handcuffs because Officer Nesbitt observed that Mr. Rinne was resisting the arrest by pulling his arm back and forth.

41.     The touching of Mr. Rinne's arm was the only time Officer Nesbitt physically touched Mr. Rinne during his arrest.

42.     It did not take any force at all to bring Mr. Rinne's arms together behind his back.

43.     Based on his observations, it is Officer Hosick's opinion that Mr. Rinne had the physical ability to place his hands together behind his back because he had already placed his hands together behind his back before handcuffs were placed on him.[3]

44.     Based on his observations, it is Officer Hosick's opinion that Mr. Rinne's refusal to obey his command to put his hands behind his back and go to the patrol vehicle was voluntary and not due to any physical disabilities.

45.     Mr. Rinne admitted that he refused to comply with Officer Hosick's request to walk back to the patrol vehicle.

46.     Officer Hosick was able to get Mr. Rinne handcuffed and took him back to his patrol vehicle.

47.     Officer Chisano did not participate in the handcuffing of Mr. Rinne.

48.     Mr. Rinne refused to follow Officer Hosick's command to comply with his investigation and walk to his patrol car.

49.     Officer Hosick observed that Mr. Rinne would not willingly

---

[3]Plaintiff claims that he "tried to explain that his prior shoulder injury and surgery made it impossible for him to put his right arm behind his back . . . He was not resisting and continued to try to explain his physical limitations." (Filing 48 at CM/ECF p. 8.) The footage from Officer Hosick's and Officer Nesbitt's body cameras contradicts this and instead confirms that Plaintiff did not tell the officers at any time about any shoulder injuries. (Filing 33, Attachment Ex. B at 19:40-41 & Ex. C at 19:41 (body-camera footage.)

go to his patrol vehicle, so he had to escort Mr. Rinne to the patrol vehicle by holding onto his arm and walking with him.

50.    Officer Hosick attempted to place Mr. Rinne in the back of his patrol vehicle, but Mr. Rinne was not willing to place his right foot in the patrol vehicle.

51.    Colleen Soldo, an off-duty Beatrice Police Officer, was at the scene and asked Mr. Rinne if he needed to be tased.

52.    At such time, Mr. Rinne informed Officer Hosick that he had previously had knee surgery and that he was not physically able to sit in the car.

53.    Prior to attempting to place Mr. Rinne in the patrol vehicle, Mr. Rinne never made any comments regarding his medical history, surgeries, or anything about his shoulders or knees.

54.    Officer Hosick informed Mr. Rinne to scoot further into the seat, as Officer Hosick observed that he was not seated properly to allow room for his feet, but Mr. Rinne refused to re-position himself.

55.    Officer Hosick observed that Mr. Rinne had another foot of room within the seat, and it appeared to Officer Hosick that Mr. Rinne was attempting to prolong the investigation.

56.    Mr. Rinne refused to comply with the Beatrice Officers' requests to scoot his butt back and sit inside of the patrol vehicle.

57.    Officer Hosick attempted to push Mr. Rinne's body into the seat properly, but Officer Hosick observed that Mr. Rinne would lock his body, preventing Officer Hosick from moving him.

58.    Officer Nesbitt observed Officer Hosick asking Mr. Rinne how he could accommodate him and help him to get inside the patrol vehicle.

59.     Officer Hosick attempted to assist Mr. Rinne's foot into his vehicle, but Officer Hosick felt Mr. Rinne lock his body again, preventing Officer Hosick from moving his leg or foot.

60.     Officer Hosick only grabbed Mr. Rinne's right leg, he tried to lift it into the patrol vehicle, but Officer Hosick stopped trying to put Mr. Rinne's right leg in the car when he expressed pain.

61.     Mr. Rinne did not express pain when he put his left foot in the patrol vehicle.

62.     Officer Nesbitt never touched Mr. Rinne when he was attempting to get in the patrol vehicle; she only gave Mr. Rinne verbal recommendations on how to get into the patrol vehicle.

63.     The verbal recommendations Officer Nesbitt gave to Mr. Rinne were to scoot his butt back into the back seat and to stop locking his body and to just relax.

64.     Officer Chisano then arrived to assist.

65.     When Officer Chisano arrived, Mr. Rinne was already in the backseat of the patrol vehicle.

66.     After arriving, Officer Chisano had a brief conversation with Mr. Rinne to listen to Mr. Rinne's concerns about being able to fit in the patrol vehicle.

67.     In an attempt to get Mr. Rinne's right leg in the patrol vehicle, Officer Chisano placed his hand underneath Mr. Rinne's thigh and did not get to a load bearing point (meaning Mr. Rinne did not bear any weight on his leg after it was lifted by Officer Chisano), and Mr. Rinne complained.

68.     After Mr. Rinne complained, Officer Chisano ceased attempting to get him in the patrol vehicle.

69.     Besides a single attempt to pick up Mr. Rinne's right leg and place it in the patrol unit, Officer Chisano never physically touched Mr. Rinne.

70.     Officer Chisano informed Officer Hosick that he believed Mr. Rinne was resisting his assistance with getting into the seat.

71.     From Officer Chisano's experience and observations, Mr. Rinne was not exerting any more discomfort than a typical person who goes through the discomfort of being arrested.

72.     At such time, the Beatrice Officers made the collective decision to try and place Mr. Rinne in Officer Chisano's SUV.

73.     Mr. Rinne did not require any assistance to walk from the patrol vehicle to the SUV.

74.     While attempting to place Mr. Rinne in Officer Chisano's SUV, Mr. Rinne again resisted Officer Chisano's initial assistance.

75.     Officer Hosick was the only person that helped Mr. Rinne get into the SUV.

76.     Officer Hosick observed that it was easier to get Mr. Rinne in the SUV than the patrol vehicle, but it is Officer Hosick's opinion that Mr. Rinne cooperated with getting into the SUV compared to the patrol vehicle.

77.     Officer Hosick obtained Mr. Rinne's consent to perform a blood draw and he transported Mr. Rinne to Beatrice Community Hospital.

78.     At 2020 hours, two vials of blood were drawn from Mr. Rinne's right arm, and they tested at .140 grams of alcohol per 100 ml of blood.

79.     Officer Hosick then transported Mr. Rinne to the Gage

County Detention Center, where Mr. Rinne submitted to a preliminary breath test with a reading of .113 grams of alcohol per 210 liters of breath.

80.    Mr. Rinne was lodged for Driving Under the Influence, Obedience to Police Officer, Refusal to Submit to a Preliminary Breath Test, and Speeding.

81.    When Officer Hosick stated in his deposition that Mr. Rinne was arrested for "obstruction", he was referring to Obedience to Police Officer, Neb. Rev. Stat. § 60-6,110.

(Filing 44 at CM/ECF pp. 3-13 (citations to record omitted).)

In addition to the above undisputed facts, Plaintiff has proposed "additional material facts that preclude summary judgment." (Filing 46 at CM/ECF p. 2.) After review of Defendants' objections[4] to each of Plaintiff's proposed facts, I find the following additional facts to be relevant, undisputed, non-repetitive, and capable of

---

[4]As to Plaintiff's evidence regarding his medical history, such history is irrelevant because the issue for qualified-immunity purposes is whether, "given the facts known [to the officers] at the time, a reasonable government official would have known that his actions violated the law." *Livers v. Schenck*, 700 F.3d 340, 362 (8th Cir. 2012) (internal quotation marks and citation omitted). There is no evidence that the Defendant officers knew the details of Plaintiff's surgical history and range of motion at any time; at most, the officers knew that Plaintiff had undergone two knee replacement surgeries when Plaintiff so informed them while Plaintiff was attempting to get into the back seat of the police cruiser.

In addition, Plaintiff's proposed "undisputed fact" that the radar used to calculate the speed at which Plaintiff was driving may have been affected by an electrical substation and power lines in the area—in support of which Plaintiff has submitted the operator's manual for the Stalker Dual DSR Direction Sensing Moving Police Radar (Filing 47-1 at CM/ECF pp. 4-36)—lacks foundation, constitutes hearsay, and is insufficient to prove that Officer Hosick's radar readings were in fact erroneous.

being presented at trial in admissible form.[5]

1.    Once Officer Hosick placed Plaintiff in handcuffs, he and Officer Nesbitt escorted him to Officer Hosick's police cruiser. At that time, Plaintiff complained about pain in his left wrist. (Filing 33, Attachment Ex. B at 19:40-41 (body-camera footage).)

2.    The police cruiser "was a four door, midsized sedan. [Plaintiff] tried to get in the back seat, as instructed. The back seat, which was a bench seat, had a metal mesh dividing the seat into two small compartments. Because of the limited space and the limited range of motion of [Plaintiff's] knees, [he] had difficulty maneuvering in the seat. Having [his] arms tightly pulled behind [his] back made it more difficult to maneuver. [Plaintiff] was able to get [his] left leg into the sedan. However, [he] could not bend [his] legs enough to get the right leg into the sedan." (Filing 37-2, Aff. Kent Rinne ¶ 8.)

3.    Officers Hosick and Nesbitt continued to instruct Plaintiff to stop resisting and get in the vehicle. Plaintiff indicated to the officers that he had undergone two knee replacements. An off-duty officer, Colleen Soldo, threatened to tase Plaintiff as the encounter continued. Plaintiff was never tased. (Filing 37-2, Aff.

---

[5]On summary judgment, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). "The objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Advisory Committee Notes to 2010 Amendment, Subdivision(c)(2). "[T]he standard is not whether the evidence at the summary judgment stage would be admissible at trial—it is whether it *could* be presented at trial in an admissible form." *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012) (emphasis in original; holding district court did not abuse its discretion in overruling hearsay objection).

Kent Rinne ¶ 8; Filing 33-1, Dep. Officer Hosick, at CM/ECF pp. 101-02.)

4.     While Plaintiff continually repeated that he could not get his entire body into the back seat of the vehicle, Plaintiff observed Officer Hosick twice grabbing Plaintiff's right leg and trying to force it into the police cruiser. Plaintiff perceived that Officer Hosick attempted to push Plaintiff's body further into the cruiser using the officer's full body weight, causing Plaintiff "a great deal of pain" that "almost brought [him] to tears." (Filing 37-2, Aff. Kent Rinne ¶ 9.)

5.     Plaintiff claims that Officer Chisano's attempt to get Plaintiff's right leg into the police cruiser "caused [his] right knee to bend beyond its limited range of motion." (Filing 37-2, Aff. Kent Rinne ¶ 10.)

6.     Neither Officer Nesbitt nor Officer Chisano tried to stop Officer Hosick in his attempts to get Plaintiff into the vehicle.

7.     At no time during the incident did Plaintiff assault or cuss at the Defendant officers.

8.     Plaintiff claims that, as a result of this incident, he tore tendons in both shoulders and had to undergo surgery to repair his left shoulder. He continues to experience pain in his right shoulder. (Filing 37-2, Aff. Kent Rinne ¶ 16.)[6]

9.     Plaintiff pled no-contest to the speeding charge, and the other three charges were dismissed. (Filing 33-1, Dep. Kent Rinne at 45:1-8; Filing 47-1 at

_____

[6]Plaintiff's surgeon's observation that "[i]t appears that this altercation [with police in August 2016] resulted in injuries to both shoulders [and] that the injury from August 2016 resulted in rotator cuff injury with eventual requirement of surgery on the left side" is hearsay, without foundation, and insufficient to prove causation. (Filing 47-1 at CM/ECF p. 38.)

CM/ECF p. 3 (letter from Gage County Attorney to Nebraska Driver Licensing Services indicating that the county attorney declined to prosecute Plaintiff for Driving Under the Influence and Refusal to Submit to a Preliminary Breath Test "due to insufficient evidence").)

## IV. DISCUSSION

### A. Excessive Force

Plaintiff claims that the Defendant officers violated his Fourth Amendment right to be free from an unreasonable use of force when Officer Hosick forced Plaintiff's hands together for cuffing and when Officers Hosick and Nesbitt "manhandled" him while "attempting to stuff Plaintiff in the backseat of the midsize patrol unit." (Filing 39, First Amended Complaint ¶¶ 22, 23.) Plaintiff claims that the "excessive force" used by Officers Hosick, Nesbitt, and Chisano caused an acute tear of his left rotator cuff, injury to his previously repaired right rotator cuff, injury to his left wrist, and chronic headaches, causing him to undergo surgery on his left shoulder and on both wrists. (*Id*. ¶ 25.)

"An officer's use of force violates the Fourth Amendment if it is objectively unreasonable." *Johnson*, 2019 WL 5656242, at *4 (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)). "Reasonableness is judged from the perspective of reasonable officers on the scene, 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Id*. (quoting *Graham*, 490 U.S. at 396-97). "Determining whether the force used was objectively unreasonable requires balancing of the individual's Fourth Amendment interests against the relevant government interests." *Hosea v. City of St. Paul*, 867 F.3d 949, 957 (8th Cir. 2017) (internal quotation marks and citation omitted). "'The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application.'" *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)).

Especially in the Fourth Amendment context, careful attention must be paid "'to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)); *Kisela v. Hughes*, —— U.S. ——, 138 S. Ct. 1148, 1153 (2018) (per curiam) ("[u]se of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue" (internal quotation marks omitted)). The court should "'allo[w] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" *Hosea*, 867 F.3d at 957 (quoting *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2020 (2014)). "[I]t is clearly established that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public." *Brown v. City of Golden Valley*, 574 F.3d 491, 499 (8th Cir. 2009).

In analyzing Plaintiff's excessive-force claim, the court must consider each officer's actions separately. *Manning v. Cotton*, 862 F.3d 663, 668 (8th Cir. 2017) ("The doctrine of qualified immunity requires an individualized analysis as to each officer because a person may be held personally liable for a constitutional violation only if his *own* conduct violated a clearly established constitutional right." (internal quotation marks and citations omitted)).

## 1.  Officer Hosick

The undisputed facts establish that while Officer Hosick was investigating the continually uncooperative and evasive Plaintiff for driving under the influence and attempting to arrest him for refusal to submit to a preliminary breath test, Officer

Hosick physically handled Plaintiff in the following ways. First, Officer Hosick tried to grab Plaintiff's arm and direct him to his patrol vehicle, but Plaintiff pulled away from Officer Hosick's grasp. Officer Hosick then grabbed Plaintiff and directed him to place his hands behind his back. While trying to place the handcuffs on Plaintiff, Officer Hosick and Officer Nesbitt (who had by then arrived to assist) repeatedly told Plaintiff to stop resisting. Officer Hosick was able to get Plaintiff's arms together by simply pushing his two arms together without force. Plaintiff would not willingly go to Officer Hosick's patrol vehicle, so Officer Hosick escorted Plaintiff to the vehicle by holding onto his arm and walking with him. Officer Hosick then attempted to place Plaintiff in the back of his patrol vehicle, but Plaintiff was not willing to place his right foot in the patrol vehicle. Officer Hosick attempted to push Plaintiff's body into the seat, but Officer Hosick observed that Plaintiff locked his body, preventing Officer Hosick from moving him. Officer Hosick then attempted to place Plaintiff's foot into his vehicle, but Officer Hosick felt Plaintiff lock his body again, preventing Officer Hosick from moving his leg or foot. Officer Hosick again grabbed Plaintiff's right leg and tried to lift it into the patrol vehicle, but stopped when Plaintiff expressed pain. Because of Plaintiff's refusal to get into Officer Hosick's patrol car, the officers finally decided to transport Plaintiff for alcohol testing in Officer Chisano's larger SUV. Officer Hosick was the only person who helped Plaintiff get into the SUV.

Officer Hosick's physical contact with Plaintiff occurred in response to Plaintiff's incessant refusal to follow any of Officer Hosick's commands, answer his questions, agree to a preliminary breath test, get in a position from which Plaintiff could be handcuffed, walk to Officer Hosick's patrol car, and get completely into the patrol car so he could be transported for blood testing. Officer Hosick observed that Plaintiff was clearly intoxicated, had just driven into his driveway after traveling 50 miles per hour in a 35-mile-per-hour zone, and repeatedly defied the four officers (one who was off-duty) who were on the volatile scene to assist due to Plaintiff's continual failure to cooperate.

Considering the seriousness of Plaintiff's suspected offense, *State v. Cerritos-Valdez*, 889 N.W.2d 605, 613 (Neb. 2017) ("Drunk driving is a serious crime that threatens public safety . . . ."); the officers' need to get Plaintiff tested for alcohol levels as soon as possible; the clearly intoxicated Plaintiff's argumentative, unpredictable, and defiant nature that prolonged the length and increased the intensity of the investigation (and the resources involved therein); and Officer Hosick's perception throughout the incident that Plaintiff was resisting arrest, *Brossart v. Janke*, 859 F.3d 616, 626 (8th Cir. 2017) (suspect resisted lawful arrest by refusing to walk to patrol car and then by refusing to comply with officer's command to move over in squad car so others could also be transported), it was objectively reasonable for Officer Hosick to apply some degree of force to handcuff Plaintiff and to get him into a police vehicle so alcohol testing could be completed. A reasonable officer could have interpreted Plaintiff's incessant refusal to be handcuffed, to walk to the patrol car, and to scoot his entire body into the car as noncompliance or resistance and that it was therefore necessary to use some degree of force to effect the arrest and get Plaintiff into the police cruiser for blood testing.

Because the amount of force applied was not unreasonable under the circumstances, Officer Hosick did not violate Plaintiff's constitutional right to be free from excessive force, and Officer Hosick is therefore entitled to qualified immunity on this claim. *See Hosea v. City of St. Paul*, 867 F.3d 949, 958-59 (8th Cir. 2017) (reasonable officer could have concluded that arrestee's partial compliance with officer's demand was passive resistance, thereby favoring officers' use of force); *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1011 (8th Cir. 2017) (officer did not violate Fourth Amendment by executing takedown of nonviolent misdemeanant when officer twice ordered suspect to place his hands behind his back, but suspect continued walking away; concluding that a reasonable officer would interpret the subject's behavior as "noncompliant," and because suspect "at least appeared to be resisting" when he continued to walk away, officer was "entitled to use the force necessary to effect the arrest"); *Wertish v. Krueger*, 433 F.3d 1062, 1066-67 (8th Cir.

2006) (when driver under suspected influence of drugs or alcohol failed to comply with orders to exit vehicle, it was objectively reasonable for officer to pull driver from truck, take him to the ground, and handcuff him; when driver continued to lie on his hands, officer reasonably pulled his hands forcibly behind his back in order to cuff them; when driver refused to stand, officers reasonably forced him to stand up and pushed him against vehicle; noting that "[w]hen a suspect is passively resistant, somewhat more force may reasonably be required" and "relatively minor scrapes and bruises and the less-than-permanent aggravation of a prior shoulder condition were *de minimis* injuries[7] that support the conclusion that [the officer] did not use excessive force").

## 2. Officer Nesbitt

The undisputed facts show that the only physical contact Officer Nesbitt had with Plaintiff was when she assisted Officer Hosick by touching Plaintiff's arm and helping to get his arms in handcuffs. To the extent touching one's arm can even be considered a use of "force," Officer Nesbitt's use of "force" in the particular factual circumstances described above was not unreasonable. Therefore, Officer Nesbitt did not violate Plaintiff's constitutional right to be free from excessive force, and she is entitled to qualified immunity on this claim.

## 3. Officer Chisano

Similarly, Officer Chisano's only physical contact with Plaintiff was placing his hand underneath Plaintiff's right thigh in an attempt to get Plaintiff's right leg into the police cruiser, which caused Plaintiff's right knee to bend beyond its limited range

---

[7]The Eighth Circuit Court of Appeals has since "reject[ed] . . . a constitutional rule that turns on the arrestee's degree of injury," *Chambers v. Pennycook*, 641 F.3d 898, 909 (8th Cir. 2011), but that does not detract from the principle that passive resistance may warrant the application of additional force.

of motion. When Plaintiff complained, Officer Chisano stopped trying to get him into the patrol vehicle. Under the circumstances described in detail above, it was not objectively unreasonable for Officer Chisano to attempt to get Plaintiff's leg into the police vehicle, especially when he stopped the physical contact when Plaintiff complained about pain. Therefore, Officer Chisano did not violate Plaintiff's constitutional right to be free from excessive force, entitling him to qualified immunity on this claim.

## B. Failure to Intervene and False Arrest

Plaintiff next claims that (1) Defendant Officers Nesbitt and Chisano had a duty to intervene to protect Plaintiff from Officer Hosick's use of excessive force against Plaintiff and (2) that the Defendant officers lacked probable cause to arrest him.

### 1. Failure to Intervene

A police officer "who fails to intervene to prevent the unconstitutional use of excessive force by another officer may be held liable for violating the Fourth Amendment." *Hollingsworth v. City of St. Ann*, 800 F.3d 985, 991 (8th Cir. 2015) (internal quotation marks and citation omitted). However, to establish such a claim, an officer must have "observed or had reason to know that excessive force would be or was being used." *Id*. (internal quotation marks and citations omitted). A police officer can be liable for failing to intervene to prevent the excessive use of force "where the officer is aware of the abuse and the duration of the episode is sufficient to permit an inference of tacit collaboration." *Krout v. Goemmer*, 583 F.3d 557, 565 (8th Cir. 2009).

Here, because I have already concluded that Defendant Hosick's actions did not constitute the use of excessive force, Officers Nesbitt and Chisano had no duty

to intervene, as there was no constitutional violation to prevent. *Hicks v. Norwood*, 640 F.3d 839, 843 (8th Cir. 2011) (court's conclusion that defendant did not use excessive force was fatal to claim that remaining defendants unconstitutionally failed to intervene). Therefore, Officers Nesbitt and Chisano are entitled to qualified immunity on this claim.

## 2. False Arrest

Plaintiff claims that the Defendant officers lacked probable cause to arrest him. The Fourth Amendment's protection of freedom from unreasonable searches and seizures encompasses the right to be arrested only with probable cause. *Williams v. City of Alexander*, 772 F.3d 1307, 1313 (8th Cir. 2014). "Probable cause exists when a police officer has reasonably trustworthy information that is sufficient to lead a person of reasonable caution to believe that the suspect has committed or is committing a crime." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010).

Although a warrantless arrest without probable cause violates the Fourth Amendment, a claim of qualified immunity from liability for such an arrest requires two more particularized inquiries: (1) whether, accepting the facts in the light most favorable to the plaintiff, an arrest based on particular circumstances did in fact lack probable cause, thereby stating a Fourth Amendment violation; and (2) if so, is it "'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Mitchell v. Shearrer*, 729 F.3d 1070, 1076 (8th Cir. 2013) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). If "'a reasonable officer *could have believed* [the] arrest to be lawful, in light of clearly established law and the information the arresting officer[] possessed,'" then he is entitled to qualified immunity. *New v. Denver*, 787 F.3d 895, 899 (8th Cir. 2015) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

Here, Officer Hosick was entitled to apprehend Plaintiff for speeding. Neb. Rev. Stat. § 60-6,192 (Westlaw 2019) ("The driver of any motor vehicle measured by use of a radio microwave, mechanical, or electronic speed measurement device to be driving in excess of the applicable speed limit *may be apprehended* if the apprehending officer: (a) Is in uniform and displays his or her badge of authority; and (b)(I) Has observed the recording of the speed of the motor vehicle by the radio microwave, mechanical, or electronic speed measurement device. . . ." (emphasis added)); *Manning v. Cotton*, 862 F.3d 663, 669 (8th Cir. 2017) (officer was justified in pulling driver over when evidence indicated violation of state traffic law and was likewise entitled to qualified immunity as to driver's claim that officer lacked probable cause to pull her over).

Next, Officers Hosick and Nesbitt had probable cause to arrest Plaintiff for refusal to submit to a preliminary breath test when Plaintiff exhibited signs of intoxication, admitted to drinking alcohol, stated that he was traveling so fast because he had to use the restroom, and was just observed to have committed a moving traffic violation. Neb. Rev. Stat. § 60-6,196 (Westlaw 2019) ("It shall be unlawful for any person to operate or be in the actual physical control of any motor vehicle . . . [w]hile under the influence of alcoholic liquor or of any drug . . . . Any person who operates or is in the actual physical control of any motor vehicle while in a condition described in subsection (1) of this section shall be *guilty of a crime* . . . ." (emphasis added)); Neb. Rev. Stat. § 60-6,197.04 (Westlaw 2019).[8]

_____

[8]Neb. Rev. Stat. § 60-6,197.04 provides:

Any peace officer who has been duly authorized to make arrests for violation of traffic laws of this state or ordinances of any city or village may require any person who operates or has in his or her actual physical control a motor vehicle in this state to submit to a preliminary test of his or her breath for alcohol concentration if the officer has reasonable grounds to believe that such person has alcohol in his or her body, has committed a moving traffic violation, or has been involved in a traffic

Because the officers did in fact have probable cause to arrest Plaintiff, they did not violate the Fourth Amendment, and they are entitled to qualified immunity on this claim.

## C. Denial of Right to Fair Trial

Plaintiff's third claim is that Defendant Officer Hosick, in violation of the Fifth and Fourteenth Amendments, forwarded to the county attorney's office and the state department of motor vehicles "false evidence and false information" consisting of reports that erroneously claimed that Plaintiff refused to cooperate and resisted arrest and dash and body-camera footage that was manipulated and incomplete. Plaintiff alleges that this destroyed, lost, and manipulated exculpatory evidence resulted in restriction of Plaintiff's liberty, Plaintiff's appearance in court, fear for Plaintiff's safety, humiliation in front of Plaintiff's spouse, handcuffing, and revocation of Plaintiff's driver's license for six months. Plaintiff claims that the administrative license revocation "remains on his record despite attempts to remove it by the Prosecutor and plaintiff," thereby "interfer[ing] with his ability to find modest work as a travelling salesperson." (Filing 39, First Amended Complaint ¶¶ 32, 42, 69-72.)

Because the Fifth Amendment only restrains the federal government and none of the Defendants are alleged to be federal employees, Officer Hosick is entitled to qualified immunity on Plaintiff's Fifth Amendment due process claim. *Livers v. Schenck*, 700 F.3d 340, 351 (8th Cir. 2012).

_____

accident. Any person who refuses to submit to such preliminary breath test or whose preliminary breath test results indicate an alcohol concentration in violation of section 60-6,196 *shall be placed under arrest*.

(Emphasis added).

As to Plaintiff's substantive due process claim under the Fourteenth Amendment, "manufacturing false evidence may shock the conscience and can violate the Fourteenth Amendment's due process clause," *Livers*, 700 F.3d at 351, so long as such fabrication of evidence is "used to deprive the defendant of h[is] liberty in some way." *Winslow v. Smith*, 696 F.3d 716, 735 (8th Cir. 2012) (internal quotation marks and citation omitted). "Substantive due process is concerned with violations of personal rights . . . so severe . . . so disproportionate to the need presented, and . . . so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to brutal and inhumane abuse of official power. . . ." *Id*. at 736 (internal quotation marks and citation omitted). "Only in the rare situation when the state action is truly egregious and extraordinary will a substantive due process claim arise." *Id. See also Riddle v. Riepe*, 866 F.3d 943, 948 (8th Cir. 2017) (negligence is insufficient to sustain a fabrication-of-evidence claim).

Plaintiff argues that Officer Hosick manufactured evidence because: (1) Plaintiff's red Buick was only in Officer Hosick's sight for less than two seconds, which was not enough time to estimate the speed of Plaintiff's vehicle, observe that there were no other vehicles in the area, use the radar to measure Plaintiff's speed, and match the radar patrol speed reading with Officer Hosick's speedometer (Filing 46 at CM/ECF p. 15); (2) the electrical power station and high-voltage wires near the location Plaintiff was seen speeding could have affected Officer Hosick's speed readings (*id*.); (3) there is "no way of knowing whether the red Buick [Officer Hosick] saw on the north side of the bridge was the same vehicle driven by the Plaintiff" (*id*. at CM/ECF p. 16); and (4) "all three body camera[] videos are missing significant portions of the incident," indicating that "the body cameras were manipulated during the incident by turning them on and off" (*id*.).

Plaintiff essentially questions the evidentiary basis for facts that have been deemed admitted due to Plaintiff's failure to properly dispute such facts under this court's local rules. It is undisputed that Officer Hosick measured Plaintiff's vehicle

to be traveling at 50 miles per hour in a 35-mile-per-hour zone. It is undisputed that Plaintiff has not proved that the electrical power station and high-voltage wires near the location Plaintiff was seen speeding affected Officer Hosick's speed readings, and the operator's manual for the Stalker Dual DSR Direction Sensing Moving Police Radar (Filing 47-1 at CM/ECF pp. 4-36) that Plaintiff offers as evidence lacks foundation and constitutes hearsay. It is undisputed that Plaintiff had been driving his red Buick, had been drinking, and was traveling so fast because he had to use the restroom. Finally, Plaintiff offers no evidence that the footage from the officers' body cameras was manipulated to create false evidence that shocks the conscience. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

There is simply no evidence that Officer Hosick's actions were "inspired by malice or sadism rather than a merely careless or unwise excess of zeal" such that "it amounted to brutal and inhumane abuse of official power." *Winslow*, 696 F.3d at 736. This is not a "rare situation when the state action is truly egregious and extraordinary" giving rise to a substantive due process claim. Once again, because Officer Hosick did not violate Plaintiff's constitutional right to substantive due process, he is protected by qualified immunity on this claim.

## D. State-Law Claim for Intentional Infliction of Emotional Distress

Because Plaintiff fails to discuss this claim in opposition to Defendants' Amended Motion for Summary Judgment, this claim will be dismissed as abandoned. *See Satcher v. Univ. of Arkansas at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009) ("failure to oppose a basis for summary judgment constitutes waiver of that argument"); *Blackwell v. Alliant Techsystems, Inc.*, No. 13-00468-CV-W-GAF, 2015 WL 13333503, at *9 (W.D. Mo. May 18, 2015), *aff'd*, 822 F.3d 431 (8th Cir. 2016)

(plaintiff's failure to address defendants' arguments on some of plaintiff's claims was grounds to grant defendants summary judgment on such claims); *United States v. NHC Health Care Corp.*, 163 F. Supp. 2d 1051, 1059 (W.D. Mo. 2001) (dismissing four of plaintiff's claims as abandoned when plaintiff failed to address such claims, or defendants' discussion thereof, in opposition to defendants' motion for summary judgment).

## IV. CONCLUSION

For the reasons discussed above, Defendant Officers Hosick, Nesbitt, and Chisano are entitled to qualified immunity on Plaintiff's excessive-force claim; Officers Nesbitt and Chisano are entitled to qualified immunity on Plaintiff's failure-to-intervene and false-arrest claim; Officer Hosick is entitled to qualified immunity as to Plaintiff's right-to-fair-trial claim; and Plaintiff's state-law claim for intentional infliction of emotional distress will be dismissed as abandoned.

IT IS ORDERED:

1.      Defendants' Amended Motion for Summary Judgment based on qualified immunity (Filing 43) is granted; and

2.      Judgment in favor of Defendants and against Plaintiff shall be entered by separate document.

DATED this 18th day of November, 2019.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge